# CHARLESTON.

ABNEY BARNES COMPANY *et al.* *v.* DAVY POCAHONTAS COAL COMPANY *et als.*

Submitted October 25, 1921.     Decided November 15, 1921.

1. JUDICIAL SALES—*Where Property Was Sold, Sale Reopened, and Again Sold to Same Purchaser, Defects in First Sale Not Applicable to Second.*

   Where the court decreeing a sale of property by special commissioners, and before the report of the sale by the commissioners is confirmed, upon an upset bid filed, opens up the sale and entertains competitive bidding in open court, and finally knocks down the property to the purchaser at the former sale at a greatly advanced price, the prior exceptions filed to the report of the special commissioners for supposed defects in the notice of sale and unsupported charges of efforts on the part of the purchaser and others to stiffle bidding, will not be applied to the sale so made by the court and duly confirmed, and to which no exceptions were taken prior to confirmation. (p. 509).

2. MORTGAGES—*Proposition by Mortgagor to Special Commissioner at Sale Not Entertained Not Ground for Setting Aside Sale.*

   Nor will the proposition of a mortgage debtor, made to such special commissioners during the crying of the sale, to redeem the property by complying with some provisions of the mortgage, not entertained by such special commissioners nor reported by them to the court, be good ground for setting aside a sale made by the court in open court under a decree directing the property to be sold, not only for the benefit of the mortgage creditors, but also for the benefit of other lien

creditors who instituted the suit and whose claims and their priorities were thereby decreed, such proposition not having been renewed to the court before confirmation of the sale upon an upset bid filed and entertained by the court. (p. 509).

3. JUDICIAL SALE—*To Justify Setting Aside Evidence Must be Strong and Convincing.*

To justify the setting aside of a judicial sale, the evidence to support the motion must be strong and convincing, else it should be denied. (p. 510).

4. SAME—*Sale May be in Open Court on Upset Bid Without Special Commissioner, and Objections to Former Sale by Commissioner are Unavailing to Latter.*

The court having jurisdiction may make sale of the property proceeded against by creditors without the intervention of a special commissioner, and upon entertaining an upset bid, may conduct such sale in open court, and when a sale is so made and confirmed, exceptions filed to a prior report of sale by special commissioners, not pertinent to the sale made by the court, need not be considered, and will be unavailing in this court upon appeal. (p. 510).

Appeal from Circuit Court, McDowell County.

Suit by the Abney Barnes Company and another against the Davy Pocahontas Coal Company and others, and from a decree therein the said coal company appeals.

*Affirmed.*

*E. C. Marshall* and *Litz & Harman*, for appellant.
*Strother, Sale, Curd & Tucker*, for appellees.

MILLER, JUDGE:

On May 12, 1919, the circuit court, by a decree agreed to and signed by the attorneys representing all parties to the cause, after reciting therein that the court had ascertained and decreed all liens and debts on the property of the Davy Pocahontas Coal Company, and disbursed on the prior liens as adjudged and decreed in prior decrees all the available funds in the hands of its special receivers except such as had been received by them since the last preceding term of the court, in accordance with the opinion and mandate of this court on a former appeal, and it still appearing that there were various creditors who had not been paid by the dis-

bursements made, and the court being of opinion that it was proper to do so, did thereby adjudge, order and decree that said special receivers, Iaeger and Atkinson, thereby appointed special commissioners for the purpose, be and they were thereby authorized and directed to sell all of the real estate described in a former decree, and other property of each and every kind, of the said company, except monies, bills and accounts receivable, as a whole, at public auction, in McDowell County, at the court house door, on or before the 2nd day of September, 1919, to the highest bidder upon the following terms: One-third in cash, and the balance in equal payments at six and twelve months after date, evidenced by the notes or bonds of the purchaser payable to said receivers, bearing interest from date, to be secured as directed by the court, with good and approved security. And said decree contained and directed that said special receivers before making said sale should first advertise the same by publishing the time, terms and place of sale in some newspaper published in the town of Welch, McDowell County, and in some daily newspaper published in the city of Baltimore, Maryland, for eight consecutive weeks, once each week in each of said papers, and by posting a copy of said advertisement, for the same period, at the front door of the court house of said county. And said decree also required of said special commissioners that they execute a bond as such in the penalty of $175,000.00. And it was by agreement also adjudged that every other thing that might otherwise be required or necessary to such decree of sale and not therein expressly provided for, was thereby expressly waived and done away with by those consenting to the decree. And said special receivers were thereby also directed to make a report of said sale at the first day of the September term of the court, 1919.

And pursuant to said decree of sale, said special commissioners, having first qualified by giving bond as required, and after advertising the sale as directed, proceeded to and did sell said property upon the terms decreed, on said 2nd day of September, 1919, at which sale they reported to the court on September 9, 1919, that the Marine and Commerce Corporation of America, a corporation of the state of Delaware,

being the highest bidder, had become the purchaser for the sum of $400,000.00, upon the terms provided by the decree, the commissioners however reporting, that as the purchaser had shown by affidavits and otherwise that it was the owner of 214 of the 297 six percent sinking fund gold bonds of the Davy Pocahontas Coal Company, of the face value of $1000.00 per bond, which entire issue was secured by the deed of trust of said defendant company to the Mercantile Trust & Deposit Company of Baltimore, trustee, dated July 1, 1910, and which bonds secured by said deed of trust were the first lien upon the property sold, and since only 83 of said outstanding bonds were not owned by said purchaser, they had required the purchaser to pay them in cash only such proportion of the one-third cash payment provided for in the decree of sale as the amount of 83 bonds bore to the amount of the entire 297 bonds, namely, $37,333.34, and had permitted the purchaser to deliver to them, on September 3, 1919, in accordance with the memorandum of sale, 96 of said bonds as the balance of the one-third cash payment; that September 6, 1919, said purchaser had paid them $96,000.00 in cash, in place of said 96 bonds, for which they had receipted to it, as a result of which they had received the entire one-third of the total cash selling price for the property; and in further compliance by said purchaser with the terms of the sale, its agent had tendered itself ready and willing to execute for the deferred payments its interest bearing notes or bonds secured as directed, as soon as the court should determine the form of such notes or bonds and security to be executed.

Upon the filing of the report of sale, on September 9, 1919, the defendant Davy Pocahontas Coal Company, by James Thomas, its solicitor, and Henry Rawie, a stockholder, tendered and filed three several exceptions in writing thereto, substantially alike, in substance and effect as follows:

*First*, that on the day of sale and before the sale was completed, the said company through its said solicitor tendered and offered to pay to said special commissioners a sum of money sufficient to cover and be equal to all arrears of interest upon said bonds with interest upon overdue installments of interest, and that said special commissioners would

not and did not receive or accept such tender of payment, and did not restore the said Davy Pocahontas Coal Company and the holders of its bonds to their respective positions in respect to said bonds, in which they stood before default in the payment of said installments of interest, contrary to the provisions of Section 2 of Article 14 of the deed or mortgage, in regard to the redemption of the property from the sale or sales thereof for the purposes of the mortgage, providing that, "if at any time after the principal of said bonds shall have been so declared to be due and payable, all arrears of interest upon said bonds (with interest upon overdue installments of interest) and all expenses, incurred by the Trustees or holders of said bonds, shall be paid by the Coal Company, or be collected out of the mortgaged premises before any sale thereof, or any part thereof, shall have been made, and then and in every case the Coal Company, the Trustee and the holders of said bonds may, at the demand of the Coal Company, be restored to the respective positions in which they stood before such default occurred, without, however, in any manner or way affecting or prejudicing any right or remedy consequent upon any other default hereunder."

*Second,* that the said Marine and Commerce Corporation of America and Walter ,L. Taylor, president and director of said coal company, who had bought and bargained for certain of the securities, open accounts and indebtedness of said coal company, but not, as the exceptors verily believed. bought or secured all of the indebtedness, securities or common stock outstanding against said company, publicly represented themselves before the date set for the public sale of said property, namely, September 2, 1919, as having acquired all but a minute percentage of the stock, bonds, securities, open accounts, judgments and other indebtedness of said company, and further holding out to the public that said property through their efforts would be withdrawn from public sale or auction thereof, under the provisions of said .Section 2, Article 14; and the exceptors believed and state the fact to be that such statements, rumors and affirmations nullified the effect of the notice of sale of said property as

published by said special commissioners, pursuant to said decree, and whereby there was created in the public mind the belief that said property would be withdrawn from sale and would not be sold as advertised, and whereby bidders were prevented and deterred from attending said sale, and competitive bidding therefor was prevented and the property sold to the only bidder, the said Marine and Commerce Corporation of America, for the sum of $400,000.00.

*Third*, that the entire property of the said Davy Pocahontas Coal Company, as the decree directed, was not included in the advertisement of the public sale thereof, nor the decree therein properly set forth, in that there was included therein only the one-half undivided interest in all that certain real estate which was conveyed to said company by Killey S. French and others, by deed of February 5, 1912, when in fact the said company was the owner in fee of the whole estate in said property; and that the said property was sold for a grossly inadequate price.

We find in the record no substantial bases for either of these three exceptions. As to the first there is not a particle of evidence to show any tender or offer of the Davy Pocahontas Coal Company, or of any one for it, to the said special commissioners on the day of sale, to comply with the provisions of said Section 2 of Article 14 of said mortgage. The exceptors stand wholly on the unsupported statements of their exceptions. Besides, the special commissioners were not authorized to entertain or accept any such offer. No such tender was made to the court prior to the sale, nor afterwards, on the report of the sale, nor before confirmation of the sale, a sale in fact made in open court following said report of sale and an upset bid made after the sale conducted by said special commissioners, at which sale so conducted by the court, the exceptors, if they were acting in good faith, were given the opportunity to make their proposition; but they did nothing of the kind, so far as the record shows, and thereby waived their rights, if any they had, at the time, to comply with the provision of said mortgage.

But at the time of the alleged offer to redeem, the court, at the suit of others than the mortgage creditors, had decreed

the property to be sold for their benefit as well as for that of the holders of the bonds secured by the mortgage, and the exceptors had no right to be restored to the possession of the property decreed to be sold as against other lien creditors. To have put itself in position to take advantage of said provision, said company was obliged to satisfy the debts of all subsequent lienors whose rights had been adjudicated by the decrees in the cause. The report of sale by the special commissioners contains no mention of the alleged offer of the exceptors, nor did they at any time prior to said sale propose to the court to redeem the property under the provisions of said Section 2 of Article 14. So that the first exceptions are wholly without merit, or evidence to sustain the fact of such offer, and were properly overruled. To justify the setting aside of a judicial sale, the evidence to support it must be strong and convincing. Here there was in fact no evidence. *Connell* v. *Wilhelm*, 36 W. Va. 598; *Moran* v. *Clark*, 30 W. Va. 358; *Tracy* v. *Shumate*, 22 W. Va. 474; *Beaty* v. *Veon*, 18 W. Va. 291; *Schmertz* v. *Hammond*, 51 W. Va. 408; *Atkinson* v. *Washington and Jefferson College*, 54 W. Va. 32.

The second exception was also without foundation in fact to support it. It stood upon the unsupported and unverified statement in the exception. Besides, whatever may have been the fact as to the efforts of the purchaser at the sale by the special commissioners to stifle bidding, that sale was not confirmed, but disregarded in the subsequent sale by the judge in open court, on receipt of an upset bid, and the final sale of the property by the court to the same purchaser at an advance of $40,000.00 over its bid at the first sale, or $440,-000.00, to which sale no exceptions were filed by any of the parties, and the same was confirmed. That the court had the power and jurisdiction to make sale of the property without intervention of special commissioners, is well settled in this state. *Core* v. *Strickler*, 24 W. Va. 689, 696; *Castleman's Adm'r* v. *Cattleman*, 67 W. Va. 407, 412-413; *Klapneck & White* v. *Kelty*, 50 W. Va. 331, 334-335; *Kable* v. *Mitchell*, 9 W. Va. 492; *Estill* v. *McClintic*, 11 W. Va. 399.

Nor do we see any merit in the third exception, of default in the advertisement of the one-half interest instead of the

whole interest in the land conveyed by Killey S. French and others to the said coal company. As the sale was made in open court of all the land and property of said coal company, and not as advertised, any defect in the advertisement was nugatory and unimportant. Whatever was decreed to be sold, was sold by the court and confirmed, and if any interest was not decreed, it was not sold, and the record discloses no prejudice to debtor or creditors. And as the property was sold by the court, as shown, and brought $40,000.00 over the price at which it was sold by the special commissioners, and there were no exceptions to this sale on any grounds, we need not further consider this point.

For the foregoing reasons we will affirm the decree.

*Affirmed.*